## CIRCUIT COURT OF FAIRFAX COUNTY

Donna J. Garrett

v.

Robert T. Garrett

November 13, 2003

Case No. (Chancery) 180233

By Judge Jonathan C. Thacher

This matter came up for a review of an equitable distribution hearing on November 10, 2003. At this hearing, there were two issues that this court took under advisement which necessarily must be resolved in order for this court to make its ruling. First, this court must determine the status of specific martial debt, namely various loans or promissory notes issued by Franklin Garrett, Sr., and Carolyn B. Garrett, the Respondent's parents, to both Complainant and Respondent jointly. Second, the court must determine the degree to which the proceeds of a specific piece of real property, namely 1807 Dryden Road, Freeville, New York (the "Dryden Property") should be traced back to the extent that it is the Respondent's separate property. After reviewing the exhibits, listening to the witnesses' testimony, and considering counsels' arguments, the Court reaches the findings and conclusions stated below.

### I. *Promissory Notes*

All of these notes represent funds borrowed from Franklin Garrett, Sr., and Carolyn B Garrett, the Respondent's parents.

Prior to February 16, 1980, the Respondent was the sole owner of the Dryden Property. On February 16, 1980, the parties married and the Dryden Property became the marital residence. Testimony established that, on July 7,

1980, the Respondent borrowed $10,000.00 to make improvements to the Dryden Property (the "Dryden Loan"). See Joint List of Exhibits at Tab 2. On August 22, 1986, the parties purchased 326 Blackstone Avenue, Ithaca, New York (the "Blackstone Property"), which became the new marital residence. See Joint Stipulations at p. 5. Also on that date, the parties signed a promissory note in the amount of $20,000.00 to aid in the purchase of the Blackstone Property (the "Blackstone Note"). See Joint Exhibits at Tab 5. On May 16, 1990, the parties sold the Blackstone Property and used the proceeds to help fund their purchase of 4216 Ann Fitz Hugh Drive, Annandale, Virginia (the "Annandale Property"), which would become that parties' new marital residence. See Joint Stipulation at p. 5. In December of 1990[1] through December of 1991, the Respondent signed a series of promissory notes amounting to approximately $160,000.00 to purchase the lot and construction of a home on the Annandale Property (the "Annandale Notes"). See Joint Exhibits at Tabs 8-9.

At this court's equitable distribution trial on November 10, 2003, there was uncontroverted testimony that no payment or demand was ever made regarding the Dryden Loan. It is also uncontroverted that no payment or demand was ever made regarding the Blackstone Note. As for the Annandale Notes, it was uncontroverted that Respondent kept up with the payments for several years, approximately $1,500.00 per month. However, the last payment ever made on the Annandale Notes was in June of 1994.

The applicable statute for determining the current status of these debts is Va. Code § 8.3A-118 (1992). The Dryden Loan is of a different character than the other two. It is not evidenced by a note, only a copy of the check written by Franklin T. Garrett, Sr., to the Respondent. Although the parties agree that this was a loan, without a written instrument to support the terms of this loan, at best, the court could conclude that, at one point, there was a note payable on demand signed on or about July 7, 1980. If there was in fact a note entered into on this date, it would no longer be enforceable. "If no demand for payment is made to the maker, an action to enforce the note is barred if neither

---

[1] The date this promissory note was entered into is in question due to a few apparent typographical errors. The Parties Joint Exhibits erroneously states the note was signed on December 31, 1999. Additionally, the first in this series of promissory notes (see Tab 8 of the Parties Joint Exhibits) is dated December 31, 1991. This is also an apparent typographical error because it demands payment on February 1, 1991, eleven months prior to the effective date of the promissory note. However, to alleviate any confusion the court will refer to all the promissory notes from December 1990 through December 1991 collectively as the "Annandale Notes."

principal nor interest on the note has been paid for a continuous period of ten years." Va. Code § 8.3A-118(b).

There has also never been any payment on the debts created by the Blackstone Note. However, the Blackstone Note is of slightly different character in that the terms of the note directed that "not later than the fifteenth day of each month, beginning in September 1986, the Borrower(s) will pay the lender's Trustees a minimum of $200.00 of which amount the proportionate per annum interest will apply." See Joint Exhibits at Tab 5. "An action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date." Va. Code § 8.3A-118(a).

The Annandale Notes are also of a slightly different character than the others. All of the Annandale Notes are identical with the exceptions of the amount loaned and the date they were entered into. Each of the Annandale Notes contains a payment provision that states "[Respondent] may make monthly payments on the first day of each month beginning [a date approximately four to six weeks following the date that particular note was signed] ... ." See Joint Exhibits at Tab 9. Later in the same payment provision of each of these notes, it states "if, on August 1, 1991, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the 'maturity date'." *Id.* Respondent did not pay all of the amounts in full when the August 1, 1991, "maturity date" arrived. At that point, the Respondent was in breach and the lenders could have sued to recover the amounts due on the note. "An action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date." Va. Code § 8.3A-118(a). Even assuming that the monthly payments the Respondent was making under these notes could successfully toll the running of the statute of limitations, the Respondent testified that he has not made a payment since June of 1994; any action the lenders could have brought under the Annandale Notes would still be barred by the statute of limitations.

The court concludes that the debts created by these loans or promissory notes are unenforceable as being barred by the statute of limitations and may not be considered part of the marital debt. Thus, they are not a barrier to this court's equitable distribution determination.

## II. *Dryden Property*

The remaining issue for the court involves how to treat the Dryden Property. Upon review of the case law and the parties' stipulations as to the relevant dates and values of the respective properties, the Court makes the following equitable distribution determination.

The Respondent possessed an equity interest of $15,854.00 in the Dryden Property prior to the parties' marriage on February 16, 1980. From the date of the marriage until the sale of the Dryden Property, the parties' earned an addition $20,379.51 as marital equity in the Dryden Property. In 1986, the parties sold the Dryden Property, commingling the proceeds which went toward the down payment of the purchase price of the Blackstone Property. In 1990, the parties sold the Blackstone property and used the proceeds as part of the down payment for the Annandale Property. However, the Respondent's $15,854.00 original equity interest in the Dryden Property is properly traced to him. See Va. Code § 20-107.3(A)(3)(e).

The parties stipulate that their total investment in the Annandale Property is $250,082.15 (marital investment of $234,228.15 plus Respondent's separate investment of $15,854.00). Dividing the Respondent's separate investment into the total investment shows that the Respondent's separate investment is 6.34% of the total investment in the Annandale Property. Further, it is stipulated that the fair market value of the Annandale Property is $525,000.00. Therefore, the Respondent's separate interest in the Annandale Property comes to $33,285.00 and the marital interest in the property is $491,715.00. Each party is entitled to one-half the martial interest in the Annandale Property, i.e., $245,857.50. The Respondent is also entitled to his separate interest of $33,285.00 bringing his total to $279,142.50.

## III. *Conclusion*

The debts created by the Dryden Loan, the Blackstone Note, and the Annandale Notes are unenforceable as being barred by the statute of limitations and may not be considered part of the marital debt. The Court rules that the Complainant is entitled to $245,857.50 and the Respondent is entitled to $279,142.50 of the proceeds of the Annandale Property.